UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEPHEN JACKS,

                Plaintiff,

    v.                                       No. 18-CV-3291 (KMK)

ANTHONY J. ANNUCCI, *et al.*,              OPINION & ORDER

                Defendants.

---

Stephen Jacks
Stormville, NY
*Pro Se Plaintiff*

Bruce J. Turkle, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

    Stephen Jacks ("Plaintiff"), currently incarcerated at Green Haven Correctional Facility ("Green Haven"), brings this pro se Action, pursuant to 42 U.S.C. § 1983, against New York State Department of Corrections and Community Supervision ("DOCCS") Acting Commissioner Anthony J. Annucci ("Annucci"), DOCCS Deputy Commissioner and Chief Medical Officer Carl J. Koenigsmann ("Dr. Koenigsmann"), DOCCS Regional Health Services Administrator Susanna Nayshular ("Nayshular"), DOCCS Facility Health Services Administrator Robert V. Bentivegna ("Dr. Bentivegna"), and Green Haven Facility Physician Kyoung Kim ("Dr. Kim") (collectively, "Defendants"), alleging that Defendants violated his Eighth Amendment rights by denying him a prescription for the medication Lyrica. Before the Court is Defendants' Motion To Dismiss (the "Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Not. of Mot.

(Dkt. No. 19).) For the reasons that follow, the Motion is granted.

## I. Background

### A. Factual History

The following allegations are drawn from the Complaint and are taken as true for the purpose of resolving the instant Motion.

In 1992, Plaintiff was involved in a "bus accident" that caused him to develop "severe traumatic peripheral neuropathy." (Compl. ¶ 15 (Dkt. No. 2).) Between 1992 and 1999, Plaintiff sought unsuccessfully to treat the pain associated with the neuropathy with various medications. (*Id.* ¶¶ 16–17.) In 1999, Plaintiff was placed on the drug Lyrica, which provided him "substantial relief from the pain." (*Id.* ¶ 17.)

Between 2005 and 2017, while Plaintiff was incarcerated at Downstate Correctional Facility, Five Points Correctional Facility, and Shawangunk Correctional Facility, he was variously placed on Lyrica and on "previous medications" that had provided him "no relief." (*Id.* ¶¶ 18–22.) In August 2017, Plaintiff was transferred to Green Haven, where he is presently incarcerated. (*Id.* ¶ 22.) At Green Haven, Plaintiff "ha[s] been given several different medications, none of which [has] quelled or reduced the substantial, debilitating pain." (*Id.*)

Plaintiff has been told by (unnamed) "nursing staff and the facility doctors" that Annucci and Dr. Koenigsmann "issued a new policy which is a blanket moratorium on any and all controlled substances and pain mediations, notwithstanding medical need." (*Id.* ¶ 23.) At Green Haven, Plaintiff has seen Dr. Kim "on several occasions." (*Id.* ¶ 25.) Dr. Kim told Plaintiff that Dr. Bentivegna and Nayshuler would deny any request for Lyrica as per the above policy. (*Id.*) As a result of being denied Lyrica, Plaintiff has suffered from "serious, debilitating pain . . . , and attendant emotional trauma, sleeplessness, hopelessness, anxiety and panic." (*Id.* ¶ 24.)

B. Procedural History

The Complaint was filed on April 13, 2018. (Compl. (Dkt. No. 2).) On April 17, 2018, the Court granted Plaintiff's request to proceed in forma pauperis ("IFP"). (Dkt. No. 4.) On October 18, 2018, Defendants filed the instant Motion To Dismiss and accompanying papers. (Not. of Mot. (Dkt. No. 19); Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 20).) Plaintiff did not file a response in opposition. On December 20, 2018, the Court deemed the Motion fully submitted. (Dkt. No. 22.)

## II. Discussion

A. Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556

3

U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted).

B. Analysis

Plaintiff alleges that Defendants' failure to prescribe him Lyrica constitutes a violation of his rights under the Eighth Amendment. (Compl. ¶¶ 29–30.) Defendants seek dismissal of the Complaint on grounds that Plaintiff fails to allege Defendants' deliberate indifference to his serious medical needs, as required to state an Eighth Amendment claim. (Defs.' Mem. 7.)[1]

1. Applicable Law

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). An inmate's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed under the Eighth Amendment because it is an allegation that "conditions of confinement [are] a form of punishment" and thus is a "violation of [the] Eighth Amendment right to be free from cruel and

---

[1] Defendants also argue that Plaintiff fails to allege the personal involvement of Annucci or Dr. Koenigsmann in any constitutional violation; that Plaintiff failed to exhaust his administrative remedies; and that Defendants are entitled to qualified immunity. (Defs.' Mem. 10–15.) Because the Court concludes that Plaintiff fails to state an Eighth Amendment violation, it need not consider these arguments at this time.

5

unusual punishments." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). To state a deliberate indifference claim, an inmate must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that the defendants "acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017).

The first element is "objective" and requires the plaintiff show that the "alleged deprivation of adequate medical care [is] sufficiently serious." *Spavone*, 719 F.3d at 138 (citation and quotation marks omitted). In other words, the plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted). Analyzing this objective requirement involves two inquiries: "whether the prisoner was actually deprived of adequate medical care," and "whether the inadequacy in medical care is sufficiently serious," which in turn "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006) (citations omitted). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has offered the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Id.* (citation and quotation marks omitted).

The second element, which goes to mental state, requires the plaintiff show that prison officials were "subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138

(citation omitted). This means that the official must have "appreciate[d] the risk to which a prisoner was subjected," and have had a "subjective awareness of the harmfulness associated with those conditions." *Darnell*, 849 F.3d at 35; *see also Nielsen*, 746 F.3d at 63 ("Deliberate indifference is a mental state equivalent to subjective recklessness," and "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (citation and quotation marks omitted)). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280 (citation and quotation marks omitted). An official's awareness of the risk of serious harm can be established through "inference from circumstantial evidence," including "from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). However, "mere negligence" is insufficient to state a claim for deliberate indifference. *Walker*, 717 F.3d at 125 (quoting *Farmer*, 511 U.S. at 835). Neither does "mere disagreement over the proper treatment . . . create a constitutional claim"; "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

    2. Application

Plaintiff fails to allege facts plausibly suggesting that Defendants were "subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. Plaintiff alleges that he was told by (unnamed) physicians and nursing staff that Annucci and Dr. Koenigsmann had issued a "blanket moratorium" on prescribing pain medications "notwithstanding medical need"; that pursuant to this policy Dr. Kim refused to prescribe Plaintiff Lyrica; and that as a result of being

7

denied Lyrica, he has suffered serious pain. (Compl. ¶¶ 23–25; *see also id.* at 12 (Plaintiff's grievance complaint stating that he is being refused Lyrica "because of the new DOCCS policy against controlled substances"); *id.* at 26 (Plaintiff's letter to Dr. Bentivegna stating that his Lyrica prescription was "stopped immediately after the moratorium on certain drugs . . . was issued").) Yet, Plaintiff also alleges that he saw Dr. Kim "on several occasions" and that he was "given several different medications" to treat his neuropathy. (Compl. ¶¶ 22, 25.) Indeed, Plaintiff acknowledges, in various inmate grievance records and numerous other letters attached to his Complaint, that although he is not being prescribed Lyrica, he is being seen by doctors at Green Haven and is being prescribed other pain management medications. (Compl. 14 (Plaintiff's grievance appeal statement stating that he was "told by Dr. Kim that he was going to start me on Meloxicam"); *id.* at 15 (denial of grievance stating that Plaintiff "has been given a drug called Cymbalta for pain management," and that "Lyrica is a drug that has addictive properties" and Plaintiff "does not have any clinical findings to support its use"); *id.* at 15–16 (Plaintiff's appeal statement acknowledging his visits with Dr. Kim and his use of Cymbalta and other pain medications, including Meloxicam); *id.* at 23–24 (letter from Plaintiff to Dr. Bentivegna stating that, after being taken off Lyrica, he was placed on Cymbalta and Meloxicam); *id.* at 25 (letter from Dr. Bentivegna to Plaintiff stating that the "Lyrica [prescription] was stopped by Dr. Lee secondary to safety concerns related to prolonged use," that "[Plaintiff] requested that Cymbalta be stopped secondary to side effects," and that as such "Dr. Kim has chosen to prescribe [him] Meloxicam for pain"); *id.* at 27 (letter from Plaintiff to Dr. Bentivegna acknowledging that he had been prescribed Meloxicam and Elavil); *id.* at 28 (letter from Dr. Bentivegna to Plaintiff stating that Elavil "is an appropriate drug for chronic pain which has been prescribed by your physician"); *id.* at 29 (letter from Plaintiff to a nurse

8

administrator stating that he is "receiving no relief from either the Meloxicam or the subsequent Elavil"); *id.* at 33 (letter from Plaintiff to Dr. Koenigsmann acknowledging that he "had been [pre]scribed . . . Cymbalta, Meloxicam[,] and Elavil").)

It is clear from the Complaint and attached documentation that Plaintiff feels the non-Lyrica medication is ineffective. Yet, this is not a case in which Plaintiff has alleged that Defendants have acted knowingly to entirely deny him medical treatment. Rather, Plaintiff alleges a "disagreement over the proper treatment," which, as noted, "does not create a constitutional claim." *Chance*, 143 F.3d at 703. Plaintiff's allegations, although they may "amount[] to medical malpractice," are "insufficient to state a [constitutional] claim of deliberate indifference." *Whitley v. Ort*, No. 17-CV-3652, 2018 WL 4684144, at *8 (S.D.N.Y. Sept. 28, 2018) (citations omitted). Although Plaintiff may prefer, even strongly so, that he be prescribed Lyrica rather than another pain medication, "it is well-settled that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference." *Washington v. Westchester County Dep't of Corr.*, No. 13-CV-5322, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014); *see also Crouch v. Spaulding*, No. 16-CV-1435, 2019 WL 1004539, at *4 (N.D.N.Y. Jan. 24, 2019) ("Plaintiff's claim . . . is not that he was entirely denied care . . . , but that he did not receive the specific treatment he requested. Such a claim is not cognizable under the Fourteenth Amendment deliberate indifference standard . . . ."), *adopted by* 2019 WL 1004357 (N.D.N.Y. Mar. 1, 2019). There are numerous cases in accord. *See, e.g.*, *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (holding that an inmate failed to state a claim for deliberate indifference where he alleged that stronger pain medication was necessary to treat his medical condition and "[t]here is no indication in the complaint that any medical provider recommended treatment different from the

9

treatment that [the plaintiff] was afforded"); *Thurmond v. Thomas-Walsh*, No. 18-CV-409, 2019 WL 1429559, at *8 (S.D.N.Y. Mar. 29, 2019) ("Here, there was disagreement among [the plaintiff's] doctors as to what the correct medication for [him] was. That Atarax turned out to be ineffective and that Vistaril was ultimately prescribed . . . for long-term use does not give rise to an Eighth Amendment violation."); *Waller v. DuBois*, No. 16-CV-6697, 2018 WL 1605079, at *8 (S.D.N.Y. Mar. 29, 2018) (dismissing deliberate indifference claim where the plaintiff "disagree[d] about the proper pain medications following the surgery" but "admit[ted] that he was indeed given pain medication"); *Williams v. Williams*, No. 13-CV-3154, 2015 WL 568842, at *5 (S.D.N.Y. Feb. 11, 2015) (noting that "courts have repeatedly declined to find that a medical provider was deliberately indifferent to an inmate's medical needs" where a plaintiff challenges "the type and quantity of pain medication"); *Sanchez v. DOCS Medical Dep't*, No. 12-CV-141, 2013 WL 4520021, at *6 (W.D.N.Y. Aug. 21, 2013) ("[A]n inmate's Eighth Amendment claim, based on his layman's belief that the prison doctor should have been giving him prescription pain medication instead of over-the-counter pain medication, amount[s] to a mere disagreement over treatment." (citations omitted)); *Crique v. Magill*, No. 12-CV-3345, 2013 WL 3783735, at *3 (S.D.N.Y. July 9, 2013) ("The mere fact that an inmate . . . would have preferred some other form of treatment[] does not constitute deliberate indifference." (citation omitted)); *Martin v. Niagara County Jail*, No. 05-CV-868, 2012 WL 3230435, at *10 (W.D.N.Y. Aug. 6, 2012) ("Plaintiff's demand for narcotic pain medications and defendants' unwillingness to prescribe them does not create an Eighth Amendment claim."); *Wright v. Genovese*, 694 F. Supp. 2d 137, 160 (N.D.N.Y. 2010) ("Differences in opinions between a doctor and an inmate patient as to the appropriate pain medication clearly do not support a claim that the doctor was deliberately indifferent to the inmate's 'serious' medical needs."), *aff'd*, 415 F. App'x 313 (2d

Cir. 2011); *Villanueva v. Baldwin*, No. 08-CV-1139, 2010 WL 841069, at *5 (N.D.N.Y. Mar. 11, 2010) (dismissing deliberate indifference claim that the plaintiff "should have continued to receive a low-level narcotic instead of a non-narcotic drug," because the claim "essentially asserts a difference in opinion as to the appropriate medication for pain relief"); *Douglas v. Stanwick*, 93 F. Supp. 2d 320, 325 (W.D.N.Y. 2000) (dismissing deliberate indifference claim where the defendant doctor "did not . . . withhold *all* pain medication from [the plaintiff], but just one particular, narcotic medication").

Accordingly, the Court concludes that, on the facts as alleged in the Complaint, Plaintiff fails to plausibly allege an Eighth Amendment claim based on Defendants' refusal to prescribe him Lyrica.[2]

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted. The Complaint is dismissed *without* prejudice. Plaintiff shall file an amended complaint within 30 days of the date of this Opinion. Plaintiff should include within that amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff should also consider addressing the alleged deficiencies in his Complaint raised by Defendants but not considered by the Court. *See supra* note 1. Plaintiff is further advised that the amended complaint will replace, not supplement, the instant Complaint. The amended complaint must

---

[2] To the extent the Complaint may be construed as alleging state law claims such as medical malpractice or negligence, (*see* Compl. ¶ 31), the Court declines to exercise supplemental jurisdiction over such claims at this time. Because the Court has dismissed Plaintiff's federal claim, the Court may, pursuant to 28 U.S.C. § 1367(c), decline to exercise supplemental jurisdiction over state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." (citation omitted)); *Sadallah v. City of Utica*, 383 F.3d 34, 39–40 (2d Cir. 2004) (directing district court to enter judgment on federal law claims and to "dismiss any state law claims without prejudice" (citing *Gibbs*, 383 U.S. at 726)).

contain all of the claims, defendants, and factual allegations that Plaintiffs wish the Court to consider. If Plaintiff fails to abide by the 30-day deadline, dismissal may be *with* prejudice.

The Clerk of the Court is respectfully requested to terminate the pending Motion, (Dkt. No. 19), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

DATED: July 17, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE